**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------------------------X
SWISS RE CORPORATE SOLUTIONS CAPACITY
INSURANCE CORPORATION as successor by merger
with NORTH AMERICAN CAPACITY INSURANCE
COMPANY,

                Plaintiff,

                **Civil Action No.:**

   v.

PJP CONSULTING, LLC D/B/A
CAVANAUGH'S RIVER DECK,

                Defendant.

------------------------------------------------------------------X

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Swiss Re Corporate Solutions Capacity Insurance Corporation as successor by merger with North American Capacity Insurance Company ("Swiss Re"), by and through its undersigned counsel, Kennedys CMK LLP, files this Complaint for Declaratory Judgment against PJP Consulting, LLC D/B/A Cavanaugh's River Deck ("PJP") and in support thereof, states and alleges as follows:

### NATURE OF ACTION

1. Swiss Re brings this coverage action against PJP seeking a declaration that $25,000 is the maximum limit of insurance available under a policy of insurance issued by Swiss Re to PJP in connection with two lawsuits filed against PJP alleging PJP is liable for injuries occurring at Cavanaugh's River Deck located at 417 N. Columbus Blvd., Philadelphia, PA (the "Bar").

### PARTIES

2. Plaintiff Swiss Re is a Missouri insurance company with its principal place of business located in Kansas City, Missouri.

3.      Defendant PJP is a Pennsylvania limited liability company duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

4.      Upon information and belief, PJP's sole member is Ron Anzalone, an individual citizen and resident of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

6.      Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) because PJP resides in this judicial district.

8.      An actual justiciable controversy exists among the parties involving the rights and obligations under a policy of insurance issued by Swiss Re to PJP.

## FACTUAL BACKGROUND

### The Underlying Lawsuits

9.      On April 19, 2023, Enrique Vargas, Jr. ("Vargas") and Faical Haouam ("Haouam") filed a lawsuit styled *Enrique Vargas, Jr. and Faical Haouam v. Cavanaugh's River Deck, et al.*, in the Court of Common Pleas, Philadelphia County, Case ID 230401939 (the "Vargas Action").

10.     A true and correct copy of the Complaint in the Vargas Action is attached as **Exhibit "A**.**"**

11. On August 2, 2023, Gregg Williams ("Williams") filed a lawsuit styled *Gregg Williams v. Cavanaugh's River Deck, et al.*, in the Court of Common Pleas, Philadelphia County, Case ID 230800270 (the "Williams Action").

12. A true and correct copy of the Complaint in the Williams Action is attached as **Exhibit "B."**

13. On June 11, 2024, the Vargas Action and the Williams Action (collectively, the "Underlying Lawsuits") were consolidated for discovery and trial, with the Vargas Action as the Lead Case.

14. The Underlying Lawsuits allege PJP is the owner of a liquor license for the property located at 417 North Columbus Boulevard, Philadelphia, Pennsylvania 19123, upon which the Bar operated and sold and/or dispensed alcoholic beverages. *See* Ex. A, ¶32; Ex. B, ¶31.

15. The Complaint in the Vargas Action (the "Vargas Complaint") alleges that on or about August 7, 2021, Vargas and Haouam were business invitees at the Bar and that as the Bar closed for business, Vargas and Haouam exited the Bar, with Haouam walking in front of Vargas. *See* Ex. A, ¶¶37-39.

16. The Vargas Complaint alleges that Haouam heard shouting from behind and when he looked behind him, he saw bouncers/security personnel/guards who were shouting and who appeared to be about to initiate a physical attack on Vargas. *See id.* at ¶¶40-41.

17. The Vargas Complaint alleges that Haouam, who was concerned for his friend's safety, stepped in front of Vargas to protect him, after which the bouncers/security personnel/guards began swinging at Vargas and Haouam. *See id.* at ¶42.

18. The Vargas Complaint alleges that without any justification or provocation from Vargas or Haouam, PJP's bouncers/security personnel/guards began to viciously, violently and unlawfully attack, assault and batter both Vargas and Haouam. *See id.* at ¶43.

19. The Vargas Complaint alleges Vargas was knocked to the ground and while he lay unconscious, two bouncers/security personnel/guards believed to be Robert Horsey ("Horsey") and George Hamilton ("Hamilton") proceed to kick Vargas in his face and head. *See id.* at ¶44.

20. The Vargas Complaint alleges Haouam took out his cell phone and began to record the battery upon Vargas and the bouncers/security personnel/guards started to aggressively approach him and one of them attacked/assaulted and battered Haouam. *See id.* at ¶45.

21. The Vargas Complaint asserts causes of action against PJP for (1) negligence/wrongful and/or negligent hiring, retention, supervision and/or training, and (2) negligence/vicarious liability for the actions of Horsey and Hamilton. *See id.* at ¶¶47-70, 95-118.

22. The Vargas Complaint further asserts causes of action for assault & battery against Horsey and Hamilton. *See id.* at ¶¶ 82-89, 131-137.

23. The Complaint in the Williams Action ("Williams Complaint") alleges that on or about August 7, 2021, Williams was a business invitee at the Bar and that when the Bar closed for business, Williams exited the Bar and was attacked from behind. *See* Ex. B, ¶¶36-38.

24. The Williams Complaint alleges that Williams witnessed an attack on two unknown individuals "he believed to be other patrons similar situated," which, on information and belief, refers to Vargas and Haouam, and that Williams was then physically assaulted by the same bouncers/security personnel/guards. *See id.* at ¶¶39-40.

25. The Williams Complaint alleges Williams was knocked to the ground/thrown to the ground by PJP's bouncers/security personnel/guards "while he lay unconscious, one of the

4

bouncers/security personnel/guards believed to be [Horsey], and another bouncer/security personnel/guards believed to be [Hamilton]." *See id.* at ¶41.

26. The Williams Complaint asserts causes of action against PJP for (1) negligence/wrongful and/or negligent hiring, retention, supervision and/or training, and (2) negligence/vicarious liability for the actions of Horsey and Hamilton. *See id.* at ¶¶42-65.

27. The Williams Complaint also asserts a cause of action for Assault and Battery against Horsey and Hamilton. *See id.* at ¶¶77-84.

### The Policy

28. North American Capacity Insurance Company issued liability insurance policy no. 88G5000026-00 to PJP for the policy period April 30, 2021 to April 30, 2022, with an Each Occurrence Limit of $1,000,000 and General Aggregate Limit of $2,000,000, and a $10,000 per claim deductible (the "Policy").

29. A true and correct copy of the Policy with premium information redacted is attached as **Exhibit "C."**

30. The declarations page of the Policy states that the limits of insurance for commercial general liability coverage are $1,000,000 per occurrence, subject to a $2,000,000 aggregate.

31. The Policy provides that Swiss Re "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and that the Policy applies to "bodily injury" only if "the 'bodily injury' . . . is caused by an 'occurrence' . . . ".

32. The Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

33. The Policy is amended by the "Exclusion – Assault & Battery" endorsement, NAC-GB-R212 (02/14), which states, in relevant part, as follows:

B. The following exclusion is added as an item to the COMMERCIAL GENERAL LIABILITY COVERAGE PART, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; COVERAGE C, MEDICAL PAYMENTS, 2. Exclusions, and to the LIQUOR LIABILITY COVERAGE PART, SECTION I - LIQUOR LIABILITY COVERAGE, 2. Exclusions:

This insurance does not apply to claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action:

1. Assault;
2. Battery;
3. Harmful or offensive contact between or among two or more persons;
4. Apprehension of harmful or offensive contact between or among two or more persons;
5. Threats by words or deeds;
6. Unlawful restraint or false imprisonment;
7. Negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
8. Failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
9. Negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
10. Negligent rescue in the aiding or failing to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be;
11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
12. Any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or
13. Indemnity for any act identified in 1-6 above.

The above acts, allegations, or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

1. Whether damages sought are for "bodily injury," "property damage," "personal injury," or "advertising injury";
2. The intent or culpability of an insured, an employee, or "third party";

3. Whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage;
4. Whether the claim, demand, or suit alleges that liability is based upon the doctrine of respondent superior;
5. Whether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties" in such a manner so as to cause damage or danger;
6. Whether the acts, allegations, or causes of action identified above occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured;
7. Whether the claim, demand, or suit alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation, or cause of action listed in Section B, items 1-13 above, or
8. Whether or not the claim, demand, or suit alleges indemnity is owed pursuant to a contract.

C. This exclusion also applies to any claims, demands, or suits by any other person, firm, estate, entity or organization asserting rights derived from, or contingent upon, any person asserting a claim excluded by Section B, items 1-13 above.

D. This exclusion applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

As defined in this exclusion, "third party" shall mean agents, independent contractors, sub-contractors, patrons, customers, lessors or lessees, security personnel, or any other persons lawfully or unlawfully on the insured's designated premise.

34. The bouncers/security personnel/guards involved in the attack of Vargas, Haouam and Williams, including Horsey and Hamilton, qualify as a "third party" as that term is defined in the Policy.

35. The Policy is further amended by a "Limited Assault & Battery Coverage" endorsement, NAC-GB-R302 (02/14), which provides, in relevant part, as follows:

**This endorsement modifies your policy under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

In consideration of the additional premium paid, we agree to afford coverage as stated below:

7

A. The specific coverage excluded under NAC-GB-R212 (02/14) is reinstated subject to the following terms, conditions and the limits of insurance stated below.

  1. We will pay no more than the applicable limit set forth below for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" for coverage excluded under NAC-GB-R212 (02/14). The applicable limit in this form is the most we will pay regardless of:

     i.   The amount of any demand for indemnity;

     ii.  The number of insureds;

     iii. The number of claims or "suits" brought against you, or

     iv.  The limits stated in the Declarations.

B. Limits:

| | |
|---|---|
| Commercial General Liability | |
| Assault & Battery Each "Occurrence" Limit | $25,000 |
| | |
| Liquor Liability | |
| Assault & Battery Each "Common Cause" Limit | $25,000 |
| | |
| "Combined Assault & Battery Aggregate Limit" | $50,000 |

The limits above are not in addition to the limits stated in the Declarations. However, any indemnity payment made pursuant to this endorsement will reduce the applicable Limit of Insurance shown in the Declarations.

The "Combined Assault & Battery Aggregate Limit" is the most we will pay for coverage under this endorsement regardless of the number of claims or "suits" brought against you arising out of more than one "occurrence" and/or "common cause."

"Common Cause" means any claim, demand, or "suit" for injuries sustained by one or more persons as a result of the providing of alcoholic beverages.

All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged.

**Swiss Re Agrees to Provide a Defense Subject to Reservation of Rights**

36. By letter dated August 14, 2023, Swiss Re acknowledged notice of the Underlying Lawsuits and agreed to provide a defense to PJP in the Underlying Lawsuits subject to a complete reservation of rights.

37. Additional letters were issued on behalf of Swiss Re on October 26, 2023, and November 25, 2024, respectively, which confirmed Swiss Re's agreement to provide a defense to PJP in the Underlying Lawsuits subject to a reservation of rights.

38. Swiss Re appointed defense counsel to represent PJP in the Underlying Lawsuits.

39. Swiss Re's reservation of rights letters to PJP state that indemnity coverage available under the Policy for the Underlying Lawsuits is limited to the $25,000 Assault & Battery Each "Occurrence" Limit of the Policy.

40. Swiss Re's November 25, 2024 letter states that Swiss Re may seek a judicial determination relating to the applicable limits of insurance, and further requests that PJP sign a Stipulation of Coverage to confirm PJP's agreement that the $25,000 Assault & Battery Each "Occurrence" Limit of the Policy is the maximum limit of insurance available to PJP with respect to the Underlying Lawsuits.

41. By email December 27, 2024, counsel for Swiss Re emailed PJP and inquired as to whether PJP intended to execute the Stipulation of Coverage attached to the November 25, 2024, letter.

42. As of the date of the filing of this lawsuit, PJP has not responded to counsel for Swiss Re and has not executed the Stipulation of Coverage.

## COUNT I
## Declaratory Judgment - Indemnity Coverage Available to PJP for the Underlying Lawsuits is Limited to the $25,000 Sublimit of Insurance under the Limited Assault & Battery Coverage Endorsement

43.     Swiss Re repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

44.     The Policy's Exclusion – Assault & Battery endorsement excludes coverage for claims or "suits" to recover damages for "bodily injury" arising from enumerated acts, allegations, or causes of action, including but not limited to assault, battery, harmful or offensive contact between or among two or more persons, or apprehension of harmful or offensive contact between or among two or more persons.

45.     The Policy's Exclusion – Assault & Battery endorsement further excludes coverage for, *inter alia,* claims or "suits" to recover damages for "bodily injury" arising from: (1) negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of assault, battery, harmful or offensive contact between or among two or more persons, or apprehension of harmful or offensive contact between or among two or more persons; (2) the failure to supervise or train any employee resulting in or pertaining to any act or allegation of assault, battery, harmful or offensive contact between or among two or more persons, or apprehension of harmful or offensive contact between or among two or more persons; (3) negligent rescue in the failing to aid any person from any act or allegation of assault, battery, harmful or offensive contact between or among two or more persons or apprehension of harmful or offensive contact between or among two or more persons; (4) negligent maintenance of the premises resulting in or pertaining to any act or allegation of assault, battery, harmful or offensive contact between or among two or more persons or apprehension of harmful or offensive contact between or among two or more persons; and (5) any act or alleged failure to prevent or bar any act or allegation of assault, battery, harmful

10

or offensive contact between or among two or more persons or apprehension of harmful or offensive contact between or among two or more persons.

46. The Policy's Exclusion – Assault & Battery endorsement further states that Swiss Re owes no obligation with respect to the acts, allegations, or causes of action identified in Paragraphs 43 and 44, above, and as set forth in full in the Exclusion – Assault & Battery Endorsement, regardless of the degree of culpability or intent, and without regard to (1) the intent or culpability of an insured, an employee, or a "third party"; (2) whether the claim alleges that an insured acted directly or indirectly to cause damage; (3) whether the claim alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties" in such a manner so as to cause damage or danger; or (4) whether the claim alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any conduct which is the basis of the assault, battery, or harmful or offensive contact between or among two or more persons.

47. The Policy's Exclusion – Assault & Battery endorsement further states that it applies to any claims, demands or suits by any other person, firm, estate, entity or organization asserting rights derived from or contingent upon any person asserting a claim excluded by the Exclusion – Assault & Battery endorsement, and applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

48. The Policy's Limited Assault & Battery Coverage endorsement reinstates coverage for claims or "suits" to recover damages for "bodily injury" arising from the acts, allegations, or causes of action excluded by the Exclusion – Assault & Battery endorsement for the applicable Each "Occurrence" Limit of $25,000, regardless of (1) the amount of any demand for indemnity; (2) the number of insureds, (3) the number of claims or "suits" brought against PJP, and (4) the limits stated in the Policy's Declarations.

49. The Underlying Lawsuits allege PJP's bouncers/security personnel/guards Horsey and Hamilton viciously, violently and unlawfully attacked, assaulted and battered Vargas, Haouam and Williams.

50. The Underlying Lawsuits allege causes of action against PJP to recover for "bodily injury" arising from the acts, allegations or causes of action identified in the Exclusion – Assault & Battery endorsement.

51. The causes of action asserted by Vargas, Haouam and Williams in the Underlying Lawsuits arise from a single "occurrence."

52. The Limited Assault & Battery Coverage endorsement applies to the Underlying Lawsuits and the $25,000 Assault & Battery Each "Occurrence" Limit of the Policy applies and is the maximum amount of insurance available to PJP under the Policy for the Underlying Lawsuits.

53. PJP has, to date, refused to acknowledge that the Policy's $25,000 Assault & Battery Each "Occurrence" Limit is the maximum limit of insurance available to PJP with respect to the Underlying Lawsuits.

54. An actual and justiciable controversy has arisen between Swiss Re on the one hand, and PJP on the other, concerning the obligations and scope of coverage available under the Policy with regard to the Underlying Lawsuits.

55. A judicial declaration is necessary and appropriate at this time so that Swiss Re can ascertain the extent of its indemnity obligation under the Policy with respect to the Underlying Lawsuits.

56. A judicial declaration of the parties' rights and obligations under the Policy will obviate further dispute and terminate the uncertainty and controversy which has given rise to this proceeding.

**WHEREFORE**, Swiss Re respectfully requests that this Honorable Court declare and adjudicate the rights and liabilities of the parties under the Policy and (1) declare that the Limited Assault & Battery Coverage endorsement in the Policy applies to the Underlying Lawsuits; (2) declare that the $25,000 Assault & Battery Each "Occurrence" Limit set forth in the Policy's Limited Assault & Battery Coverage endorsement is the maximum limit of insurance available to PJP under the Policy for all "bodily injury" claimed by Vargas, Haouam and Williams in the Underlying Lawsuits; and (3) provide such other and further relief as this Court may deem just and equitable.

## ALTERNATIVE COUNT II
### Declaratory Judgment – The $50,000 Combined Assault & Battery Aggregate Limit under the Limited Assault & Battery Coverage Endorsement is the Maximum Indemnity Coverage Available to PJP for the Underlying Lawsuits

57.    Swiss Re repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

58.    Swiss Re maintains that the Limited Assault & Battery Coverage endorsement applies to the Underlying Lawsuits and that the $25,000 Assault & Battery Each "Occurrence" Limit of the Policy applies and is the maximum amount of insurance available to PJP under the Policy for the Underlying Lawsuits. Notwithstanding that position, and pleading in the alternative, the Limited Assault & Battery Coverage endorsement applies to the Underlying Lawsuits and the $50,000 "Combined Assault & Battery Aggregate Limit" of the Policy applies and is the maximum amount of insurance available to PJP under the Policy for the Underlying Lawsuits.

59.    An actual and justiciable controversy has arisen between Swiss Re on the one hand, and PJP on the other, concerning the obligations and scope of coverage available under the Policy with regard to the Underlying Lawsuits.

60. A judicial declaration is necessary and appropriate at this time so that Swiss Re can ascertain the extent of its indemnity obligation under the Policy with respect to the Underlying Lawsuits.

61. A judicial declaration of the parties' rights and obligations under the Policy will obviate further dispute and terminate the uncertainty and controversy which has given rise to this proceeding.

**WHEREFORE**, Swiss Re respectfully requests that this Honorable Court declare and adjudicate the rights and liabilities of the parties under the Policy and (1) declare that the Limited Assault & Battery Coverage endorsement in the Policy applies to the Underlying Lawsuits; (2) declare that the $50,000 "Combined Assault & Battery Aggregate Limit" set forth in the Policy's Limited Assault & Battery Coverage endorsement is the maximum limit of insurance available to PJP under the Policy for all "bodily injury" claimed by Vargas, Haouam and Williams in the Underlying Lawsuits; and (3) provide such other and further relief as this Court may deem just and equitable.

**KENNEDYS CMK LLP**

By: */s/ Gavin Fung*
 Gavin Fung (Attorney ID: 318709)
 1600 Market Street | Suite 1410
 Philadelphia, PA 19103
 (267) 479-6700 (phone)
 (267) 375-8884 (fax)
 Gavin.Fung@kennedyslaw.com

 *Attorneys for Plaintiff*
 *Swiss Re Corporate Solutions Capacity*
 *Insurance Corporation as successor by*
 *merger with North American Capacity*
 *Insurance Company*

Date: April 3, 2025

14